THE STATE OF OHIO, APPELLEE, *v.* SHEROW, APPELLANT.

(No. 214—Decided June 6, 1956.)

*Mr. Warren F. Sheets,* prosecuting attorney, for appellee.
*Messrs. Cherrington & Cherrington,* for appellant.

COLLIER, J.  This is an appeal on questions of law, directed to the judgment of the Juvenile Court of Gallia County finding the defendant guilty of contempt.  The assignments of error present two questions of law to be determined by this court, as follows:  1. Is the evidence sufficient to establish the guilt of the defendant?  2. Is the order of the court, which the defendant is charged with violating, a valid order?  The factual situation disclosed by the record may be summarized as follows:  On January 31, 1956, the Juvenile Court of Gallia County sentenced five juvenile delinquents, who were 15 and 16 years of age, to the Boys' Industrial School.  On the same day, the court entered an order prohibiting the publication of the names of the juveniles by any person or corporation.  Pursuant to that order Judge Howell requested Charles Butler, a reporter for the Gallipolis Daily Tribune, not to publish the names of the juveniles. Butler, the reporter, left the story of the sentencing together with the names of the juveniles on the desk of the defendant, with a note telling of the request of the judge.  The defendant, Vic Sherow, is managing editor of the Gallipolis Daily Tribune. The defendant admits he received the notice of the request of Judge Howell not to publish the names but denies that he had any knowledge of the existence of the court order prohibiting the publication of the names of the juveniles.  On February 2, 1956, the court, on its own motion, filed the following written charges in contempt against the defendant:

"The State of Ohio, Gallia County, Juvenile Court

"State of Ohio　　　　　　　February 2, 1956
"vs　　　　　　　　　　　Case No. 570
"Vic Sherow　　　　　　　Charge of Contempt

"John W. Howell, judge of said court, prefers charges against Vic Sherow, and says that said Vic Sherow is guilty of contempt, in this, to-wit: The said Vic Sherow disobeyed the order of this court heretofore made, ordering that the names of the five certain juveniles found to be delinquent in this court on January 31, 1956, be not made public as enjoined in R. C. 2151.14 and against the specific order of the court, by causing the names, ages and addresses of said juveniles to be published in the February 1, 1956, issue of the Gallipolis Daily Tribune a newspaper of general circulation in Gallia County, Ohio.

"John W. Howell, Judge."

A summons in contempt was issued for defendant, the the cause was heard and the defendant was found guilty of violating the order of the court and sentenced to pay a fine of $200, from which judgment and sentence the defendant has perfected his appeal on questions of law to this court.

The only purpose of the proceeding was to punish the accused and not to confer a benefit or restitution upon the plaintiff, and, therefore, it is criminal in nature as distinguished from a civil contempt. In a contempt proceeding which is criminal or quasi-criminal in nature, there is a presumption of innocence in favor of the accused, and this presumption remains until the guilt of the accused is established beyond a reasonable doubt. In such a proceeding the accused can not be called for cross-examination without his consent. 11 Ohio Jurisprudence (2d), 155, Section 73.

The evidence in this case consists only of the testimony of the defendant, who was called for cross-examination, the introduction in evidence of the court order prohibiting the publication of the names of the juveniles and the issue of the Gallipolis Daily Tribune of February 1, 1956, which shows the publication of the names of the juveniles. The defendant was not subject to cross-examination, to which a timely objection was made, and his testimony was improperly admitted in evidence. It should

not be considered in determining his guilt or innocence. Without the testimony of the defendant there is no evidence to establish his guilt. Even if we gave full consideration to the testimony of the defendant, there still is an essential element of proof lacking, and that is that the defendant had knowledge of the written order of the court. Information that the judge had simply made a request not to do a certain thing is not sufficient to prove the defendant had knowledge that the judge had made a written order to that effect. Because of the arbitrary nature of proceedings in contempt and since they affect personal liberty, the proceedings and statutes governing them must be strictly construed. 11 Ohio Jurisprudence (2d), 149, Section 66. Those considerations lead us to the conclusion that the publication of the names of the juveniles in the newspaper of which the defendant is managing editor does not constitute a contempt by this defendant.

We now turn to the question of the validity of the order. Much may be said for and against the wisdom of an order of a court prohibiting the publication of the names of juvenile delinquents. However, in the decision of this case we are not concerned with that question. We are simply called upon to determine whether the Juvenile Court had authority to issue such order, whether such order is valid and whether such order contravenes the provisions of the state and federal Constitutions which guarantee freedom of speech and a free press.

The Juvenile Court judge, who, on his own motion, initiated the charge in contempt against the defendant, relies upon the provisions of the Juvenile Court Act, Sections 2151.01 to 2151. 99, inclusive, Revised Code, and especially claims a violation of Section 2151.14, Revised Code, which makes provision for the establishment of a probation department of the Juvenile Court. That statute defines the duties of the probation officers and specifically provides: ''The reports and records of *the department* shall be considered confidential information and shall not be made public.'' (Emphasis ours.) Construing such statute strictly, as we are required to do in a criminal contempt proceeding, we must conclude that that provision of the statute applies only to the probation department of the Juvenile Court and has no application to cases where the delinquents have been

sentenced and committed to a state institution. If the Legislature had intended to include all matters pertaining to cases involving juvenile delinquents, whether on probation or after sentence had been pronounced against them, appropriate language would have been employed to indicate such intention. Review ing courts have no authority to extend the meaning of such a statute by implication.

In pending cases, it is true that the Juvenile Court Act must be, and is, interpreted and administered in a more informal and sympathetic manner than laws relating to adults, in order to carry out the purpose of the act. Under the Juvenile Court Act the court is dealing with children and not with adults. However, in our opinion, this policy and practice should not be followed in cases which have been finally terminated and where the publication of the names of the juveniles could not have obstructed or impaired the administration of justice. Furthermore, no one ought to be found guilty upon a doubtful charge of indirect contempt, and especially so in a case involving the freedom of the press.

Therefore, the judgment of the lower court is reversed and the defendant discharged.

*Judgment reversed.*

McCurdy, P. J., and Gillen, J., concur.