205 P.3d 577

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Chito ASUNCION, Defendant–Appellant.**

**No. 28230.**

Intermediate Court of Appeals of Hawai'i.

March 30, 2009.

Okechukwu K. Amadi, Deputy Public Defender, State of Hawai'i, on the briefs, for Defendant–Appellant.

M. Kanani Laubach, Deputy Prosecuting Attorney, County of Hawai'i, on the briefs, for Plaintiff–Appellee.

WATANABE, PRESIDING J., FOLEY, and FUJISE, JJ.

Opinion of the Court by WATANABE, Presiding J.

This appeal stems from a judgment entered by the District Court of the Third

Circuit[1] (district court) on October 4, 2006, convicting and sentencing Defendant–Appellant Chito Asuncion (Asuncion) for criminal contempt of court (criminal contempt) in violation of Hawaii Revised Statutes (HRS) § 710–1077 (1993), as a result of Asuncion's violation of a no-contact condition of his probation sentence. The criminal-contempt charge was filed against Asuncion after his probation period had expired and it was no longer possible to revoke probation.

Asuncion asserts that the district court: (1) erred in convicting him of criminal contempt because the proper penalty for violating a condition of probation is probation revocation; (2) unlawfully subjected him to an extension of his probation and additional punishment; and (3) erred in convicting him of criminal contempt because he was never given notice that if he violated a term or condition of his probation, he would be subject to a criminal-contempt charge after his probation period had expired.

We reverse the judgment.

## BACKGROUND

### A.

The record in this case is rather sparse. However, it appears that on April 20, 2004 in Case No. H–74006, the district court convicted and sentenced Asuncion for custodial interference in the second degree (CI2) with respect to A.V., a minor, in violation of HRS § 707–727 (Supp.2008).[2] On July 6, 2004, the district court[3] filed an order setting forth the terms and conditions of Asuncion's probation sentence (July 6, 2004 Order), which provided, in relevant part, as follows:

> IT IS THE ORDER OF THE COURT that during the period of <u>one year</u> you shall comply in all respects with the MANDATORY TERMS AND CONDITIONS for probation sentences (* *stated in the back of this Order)[4] and/or the following special conditions:
>
> . . . .
>
> <u>X</u>   3.   You will be confined to the Hawai'i Community Correctional Center for <u>7</u> days; Mitt: forthwith
>
> <u>X</u>   4.   You will return to court for proof of compliance on <u>September 13, 2004 @ 1:00 p.m.</u>;
>
> <u>X</u>   5.   You will not violate further criminal laws;
>
> <u>X</u>   6.   You will pay crime injury compensation fee of $ <u>50</u>;
>
> <u>X</u>   7.   You will pay probation fee of $ <u>75</u>;
>
> <u>X</u>   8.   Other special terms and conditions:
>
> a) Do not contact complainant, [A.V.,] without consent;[5]
>
> b) Abide by terms & conditions of probation;

1. The Honorable Matthew S.K. Pyun presided.

2. HRS § 707–727 provides currently, as it did at all times relevant to the proceedings against Asuncion, as follows:

   **Custodial interference in the second degree.** (1) A person commits the offense of custodial interference in the second degree if:
   (a) The person intentionally or knowingly takes, entices, conceals, or detains a minor knowing that the person has no right to do so; or
   (b) The person intentionally or knowingly takes, entices, conceals, or detains from lawful custody any incompetent person, or other person entrusted by authority of law to the custody of another person or an institution.
   (2) Custodial interference in the second degree is a misdemeanor, if the minor or incompetent person is taken, enticed, concealed, or detained within the State. If the minor or incompetent person is taken, enticed, concealed, or detained outside of the State under this section, custodial interference in the second degree is a class C felony.

3. The Honorable Joseph P. Florendo, Jr. signed the order.

4. The certified copy of the July 6, 2004 Order that is included in the record on appeal does not include, on the back of the order, any mandatory terms and conditions for probation.

5. The July 6, 2004 Order does not indicate whose consent is required for Asuncion to contact A.V. Moreover, based on the record, it does not appear that A.V. was the complainant in the CI2 case against Asuncion. During the proceedings below, Asuncion argued that the no-contact special condition of his probation was "broad and vague" and that Plaintiff–Appellee State of Hawai'i (State) had failed to prove that he was not given consent to contact A.V. However, Asuncion has not raised the vagueness of the special condition as an issue on appeal.

c) Schedule appointment with Probation Division within one week[.]

(Footnote added.) The following acknowledgment, signed by Asuncion on May 19, 2004, appears at the bottom of the July 6, 2004 Order, below the judge's signature:

> I, the undersigned defendant, acknowledge that the foregoing terms and conditions have been explained to me and I understand that if I violate them, my suspended sentence or probation may be revoked. If proceedings have been deferred under Chapter 853, or Section 712–1255, Hawai'i [sic] Revised Statutes, violation of the foregoing terms and conditions may result in the court accepting my guilty/no contest plea and sentencing me. I also acknowledge receipt of the written copy of the Mandatory and Special Conditions as ordered by the Honorable JP Florendo, Jr.

(Underscoring omitted.)

### B.

On September 9, 2004, as a result of an incident that allegedly occurred on August 13, 2004, Asuncion was apparently arrested in Kona, Hawai'i and charged with CI2. On October 12, 2004, Asuncion was apparently arrested again for CI2. At the outset of Asuncion's trial, which commenced on March 22, 2006, Asuncion was orally charged,[6] not with CI2, but with two counts of criminal contempt of court:

> Mr. Asuncion, you're charged that: On or about the 13th day of August, 2004, in the District of South Hilo, County and State of Hawaii, you did knowingly disobey or resist the process, injunction, or other mandate of a court by pick—by contacting initials A.V., a minor, after having been ordered by the court to have no contact with initials A.V., a minor, thereby committing the offense of Contempt of Court, in violation of Section 710–1077(1)(g) of the Hawaii Revised Statutes.
>
> . . . .
>
> . . . And on or about that date of August—October 12th, 2004, in the District of South Hilo, County and State of Hawaii, you did knowingly disobey or resist the process, injunction, or other mandate of the court by failing to appear in court after having been—after having signed a[n] order to appear, thereby committing the offense of Contempt of Court, in violation of Section 710–1077(1)(g)(iii)(b) of the Hawaii Revised Statutes.

At trial, the first witness called by the State was Brent O'Rear (O'Rear), Asuncion's probation officer. O'Rear testified that he had explained to Asuncion the terms and conditions of Asuncion's probation sentence, including the requirement that he not have contact with A.V. O'Rear also stated that he "imagine[d]" that he had met with Asuncion "maybe four times" while Asuncion was on probation and Asuncion had never asked for permission to see A.V.

Punnette Haunani Yorong (Yorong), A.V.'s grandmother, testified next. She explained that on August 13, 2004, A.V. was sixteen years old, and because there had been some problems in Kona involving custodial interference, A.V.'s mom had sent A.V. to live with Yorong in Hilo. Yorong testified that on the morning of August 13, 2004, she received a phone call from another daughter, Desseire, who reported that A.V. had been seen at an apartment in Pu'u'eo. Following the call, Desseire picked up Yorong, and they went to the apartment in Pu'u'eo and waited in the stairwell for A.V. to come out. After about half an hour to forty-five minutes, A.V. and Asuncion "both came out of the apartment."

Yorong testified that she waited until A.V. and Asuncion were in the parking lot and then called A.V. by name. According to Yorong, A.V. was "very shocked that they were caught" and Asuncion "gave us a look, he jumped in his car and went out of the parking area." Yorong stated that she did not give A.V. permission to see Asuncion. Upon questioning by the deputy prosecutor, Yorong further explained as follows:

---

6. Since Asuncion did not enter a plea after he was orally charged, we presume that he was formally arraigned on the contempt charges at an earlier date. The record on appeal does not indicate when the charge against Asuncion for CI2 was amended to allege criminal contempt instead.

Q. And did you ever give [Asuncion] permission to see [A.V.]?

A. No. We asked him to stop.

Q. So did he ever call your house asking for permission to—

A. Oh, yes. He was calling quite often.

Q. Okay. And you talked to him?

A. Couple times.

Q. What—what did you tell him?

A. I just asked him to stay away from her because she was too young. She's 16. He was 28.

Q. What did he say to you?

A. That they both loved each other. They wanted to still be with each other.

Q. But did you at any time give him permission—

A. No. Never.

Q. So on August 13, 2004, did you give [Asuncion] permission to be with [A.V.] at Val–Hala Apartments?

A. No, I didn't. She was suppose [sic] to have been at work.

Q. How did she get to work?

A. That day Desiree [sic], my daughter, dropped [A.V.] off at work. [A.V.] said she worked at 10.

Q. And did you find out what time she was suppose [sic] to start?

A. Uh, [A.V.] actually was suppose [sic] to start at 11.

On cross-examination, Yorong stated that she was made A.V.'s guardian by A.V.'s mother in January 2004, which allowed Yorong "to arrange medical treatment for [A.V.]." Yorong stated she was never made a foster parent for A.V. Yorong also agreed that when A.V. and Asuncion came out of the apartment, Asuncion was not restraining A.V. in any way.

The State's final witness was Desseire, A.V.'s aunt. She testified that on the morning of August 13, 2004, she dropped A.V. off at work between 9:30 a.m. and 10:00 a.m. Subsequently, she received a phone call from a friend who had spotted A.V. at the Val–Hala Apartments. Desseire stated that she called her mom, Yorong, to "let her know what my friend had seen" and "picked up [Yorong] from work and went to the apart-ment to see if it was [A.V.]." Desseire explained that after arriving at the Val–Hala Apartments, she and Yorong "waited in the stairwell closest to the end of the building" for "[m]aybe about 15, 20 minutes." Thereafter, she and Yorong saw Asuncion and A.V. "walk out together towards the vehicle. I'm assuming he was taking her to work." According to Desseire, Yorong "then yelled for [A.V.]" and "[A.V.] stopped in shock." A.V. then walked towards Yorong, Asuncion smiled and drove away, and Yorong called the police for help.

Following the presentation of the State's evidence, the State orally moved to nolle prosequi the second criminal contempt charge against Asuncion. Additionally, Asuncion orally moved for a judgment of acquittal, arguing, in relevant part, as follows:

The State has presented no evidence whatsoever of a valid court order which ordered [Asuncion] not to have contact with [A.V.]. What the State did present to the Court was a[n] order of probation. An order of probation with terms and conditions. One term and condition was that he have no contact. And we would submit to the Court that based on the evidence presented to the Court, what the State has proven is merely a violation of his probation. And what the State is attempting to do is to remedy the fact that no revocation was initiated prior to the termination or expiration of his probation period. And they have done that by extending—basically extending the period of probation by charging him with a contempt of court which has a—I believe a two-year statute of limitations. So in effect they've effectively extended his probation for two additional years to go back and charge him for violation of his probation.

Also, Your Honor, what we would submit to the Court is that what the State has proven is that a condition of his probation was that he not have contact with [A.V.], and I believe it was stated by the witness that was without consent of a custodial parent or foster parent. And this particular case there hasn't been any evidence who at the time on August 13th, 2004, was

the custodial parent, who if anyone was the foster parent. So we have no indication whether or not either the custodial parent or the foster parent gave consent for the contact between [A.V.] and [Asuncion].

The district court orally denied Asuncion's motion for judgment of acquittal. Asuncion presented no witnesses.

During closing arguments, Asuncion's counsel argued, in relevant part, as follows:

Your Honor, I think the more troubling issue is the fact that this is a[n] order of probation. The terms and conditions of probation result in a violation of probation. And as indicated at the very bottom of this order which is given to [Asuncion], and I guess all defendants that are placed on probation, it says, "I understand that if I violate them my suspended sentence or probation would be revoked."

If you look at the statute regarding probation, that is the remedy the State is allowed or the Court is allowed for a violation of probation, is to revoke probation. And often times [sic] you will hear the Court not in addition to the conditions—terms and conditions of probation specifically order a defendant to report here or there. In those particular and specific cases where a defendant is ordered outside of the terms and conditions of probation, then I think perhaps it would be appropriate for the State to come in and charge him with contempt of court of that specific order.

But when you have a situation where this is just terms and conditions of probation, first of all, a defendant is really not given reasonable and adequate notice, due process notice that by violating the terms and conditions of his [or her] probation he [or she] is also subjecting himself [or herself] to a criminal—a separate criminal offense simply by violating a term and condition which would otherwise not constitute any type of criminal offense.

And, Your Honor, to really get an idea of what the State is attempting to do and turn the whole probation scheme upside down, is that a person could be put on probation for six months for a petty misdemeanor. The State could wait for two years after that six months and within those two years could charge him [or her] with contempt of court for violating his [or her] petty misdemeanor probation. And then subject him [or her] to even greater sanctions by charging him [or her] with a misdemeanor contempt. We don't think that that is what was contemplated by the scheme of probation provided by the statutes.

Your Honor, there is a specific period of time that the State is allowed to come to court for remedies for the violation of a defendant's probation. They cannot extend that period of time and then go around the laws for that by extending it by charging a person with contempt of court. Otherwise, all of the defendants would then be subject to two additional years of basically being on probation.

The district court found Asuncion guilty of criminal contempt. Asuncion filed his notice of appeal on October 20, 2006, and on January 17, 2007, the district court entered its Findings of Fact and Conclusions of Law. Among the district court's findings were the following:

4. On August 13, 2004, there was a valid court order prohibiting [Asuncion] from having contact with [A.V.].

5. The court order was an order by the Honorable Joseph P. Florendo, Jr., placing [Asuncion] on probation for the charge of [CI2], under case no. H–74006, on April 20, 2004 and filed on July 6, 2004.

6. One of the special terms and conditions in that order was: "Do not contact complainant, [A.V.,] without consent;"

7. [Asuncion] had signed the probation order on May 19, 2004, acknowledging that the terms and conditions had been explained to him.

8. [Asuncion's] probation officer, [O'Rear], had reviewed the terms and conditions with [Asuncion].

9. On August 13, 2004, [Asuncion] had not been given consent to contact [A.V.] from [Yorong] or from his probation officer, [O'Rear].

10. On August 13, 2004 [Yorong] was the legal guardian of [A.V.].

The district court concluded:

1. On August 13, 2004, there was a valid court order prohibiting [Asuncion] from having contact with [A.V.] without consent.

2. [Asuncion] knew that there was a court order prohibiting contact with [A.V.] without consent and he knowingly disobeyed that order.

3. The State of Hawaii has proven all of the elements of the charge of Criminal Contempt of Court, beyond a reasonable doubt.

■ [Asuncion] is found guilty of the offense of Criminal Contempt of Court.

7. HRS § 706–605(1)(a) currently provides, in relevant part, as it did at the time Asuncion committed the CI2 offense which led to his probation sentence, that with certain exceptions, "the court may sentence a convicted defendant ... [t]o be placed on probation as authorized by part II of this chapter[.]" Part II of HRS chapter 706 (HRS §§ 706–620 through 706–631) relates specifically to probation.

8. HRS § 706–620, entitled "Authority to withhold sentence of imprisonment[,]" currently provides, as it did at the time Asuncion committed the CI2 offense that resulted in his placement on probation, that "[a] defendant who has been convicted of a crime may be sentenced to a term of probation" unless the defendant has committed particular types of crimes or "is a repeat offender under section 706–606.5" or "a felony firearm offender as defined in section 706–660.1(2)[.]"

9. HRS § 706–622, entitled "Requirement of probation; exception[,]" provides that "[w]hen a person who has been convicted of a felony is not sentenced to imprisonment, the court shall place the person on probation. Nothing in this part shall prohibit the court from suspending any sentence imposed upon persons convicted of a crime other than a felony."

10. At the time Asuncion committed the CI2 offense that led to his probation sentence, HRS § 706–624 provided, in pertinent part, as follows:

> **Conditions of probation.** (1) Mandatory conditions. The court shall provide, as an explicit condition of a sentence of probation:
> (a) That the defendant not commit another federal or state crime during the term of probation;

## DISCUSSION

### A.

The statutes governing the disposition of convicted defendants in Hawai'i are set forth in HRS chapter 706, which is part of the Hawaii Penal Code. HRS § 706–600 (1993) expressly states that "[n]o sentence shall be imposed otherwise than in accordance with this chapter." Pursuant to HRS chapter 706, a court is authorized, with certain exceptions, to sentence a convicted defendant to be placed on probation. *See* HRS §§ 706–605(1)(a) (Supp.2008),[7] 706–620 (Supp.2008),[8] and 706–622 (1993).[9] HRS § 706–621 (1993) lists the factors to be considered by a court in imposing a term of probation. Pursuant to HRS § 706–624 (1993),[10] a convicted defendant who is placed

> (b) That the defendant report to a probation officer as directed by the court or the probation officer;
> ....
> (2) Discretionary conditions. The court may provide, as further conditions of a sentence of probation, to the extent that the conditions are reasonably related to the factors set forth in section 706–606 and to the extent that the conditions involve only deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 706–606(2), that the defendant:
> (a) Serve a term of imprisonment ... not exceeding six months in misdemeanor cases; provided that notwithstanding any other provision of law, any order of imprisonment under this subsection that provides for prison work release shall require the defendant to pay thirty per cent of the defendant's gross pay earned during the prison work release period to satisfy any restitution order. The payment shall be handled by the adult probation division and shall be paid to the victim on a monthly basis;
> ....
> (h) Refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons, including but not limited to the victim of the crime, any witnesses, regardless of whether they actually testified in the prosecution, law enforcement officers, co-defendants, or other individuals with whom contact may adversely affect the rehabilitation or reformation of the person convicted;
> ....
> (n) Satisfy other reasonable conditions as the court may impose;
> (3) Written statement of conditions. The defendant shall be given a written copy of any requirements imposed pursuant to this section, stated with sufficient specificity to enable the

on probation is subject to certain mandatory conditions, as well as those discretionary conditions that may be imposed by the sentencing court. If a defendant who is granted probation fails to comply with the conditions of his or her probation sentence, the court may revoke probation or enlarge the conditions of probation. HRS § 706–625 (Supp.2008).[11] When a court revokes probation, it may impose on the defendant any sentence that might have been imposed originally for the crime that the defendant was convicted of committing. *Id.* Additionally, pursuant to HRS § 706–630 (Supp.2008),[12] "[u]pon the termination of the period of the probation or the earlier discharge of the defendant, *the defendant shall be relieved of any obligations imposed by the order of the court and shall have satisfied the disposition of the court,* except as to any action under this chapter to collect unpaid fines, restitution, attorney's fees, costs, or interest." (Emphasis added.) According to the commentary on HRS § 706–630 (1993):

> This section provides that the court may discharge the defendant prior to the termination of the period of suspension or probation and that, if the defendant is not so discharged, *no formal discharge is required upon termination of the statutory period of suspension or probation. Upon termination of the statutory period, the defendant is relieved of any further obli-*

*gation by operation of law.* This provision is a continuation of prior Hawaii law.

(Emphasis added.)

In summary, pursuant to the sentencing scheme set forth in HRS chapter 706, the consequences of violating a discretionary condition of probation are laid out in HRS § 706–625, which provides for revocation of probation and imposition of any sentence that could have been imposed for the crime underlying the probation sentence, or modification or enlargement of the probation conditions. Moreover, based on the unambiguous language of HRS § 706–630, a convicted defendant whose period of probation has ended is relieved of any further obligations imposed by the order of probation and is regarded as having "satisfied the disposition of the court."

In this case, Asuncion's term of probation ended without any motion being filed to revoke Asuncion's probation or modify or enlarge the conditions of Asuncion's probation. Pursuant to HRS § 706–630, therefore, Asuncion was deemed to have satisfied his probation sentence and was relieved of any further obligation imposed by the terms of his probation.

The issue of first impression presented by this appeal is whether the district court was authorized to convict Asuncion of criminal contempt for violating a discretionary condition of his probation sentence.

defendant to guide the defendant's self accordingly.

HRS § 706–624 was subsequently amended, but the amendments are not relevant to this appeal.

**11.** HRS § 706–625 currently provides, as it did when Asuncion committed the CI2 offense that led to his sentence, in relevant part, as follows:

**Revocation, modification of probation conditions.** (1) The court, on application of a probation officer, the prosecuting attorney, the defendant, or on its own motion, after a hearing, may revoke probation except as provided in subsection (7), reduce or enlarge the conditions of a sentence of probation, pursuant to the provisions applicable to the initial setting of the conditions and the provisions of section 706–627.

. . . .

(3) The court shall revoke probation if the defendant has inexcusably failed to comply with a substantial requirement imposed as a

condition of the order or has been convicted of a felony. The court may revoke the suspension of sentence or probation if the defendant has been convicted of another crime other than a felony.

(4) The court may modify the requirements imposed on the defendant or impose further requirements, if it finds that such action will assist the defendant in leading a law-abiding life.

(5) When the court revokes probation, it may impose on the defendant any sentence that might have been imposed originally for the crime of which the defendant was convicted.

(6) As used in this section, "conviction" means that a judgment has been pronounced upon the verdict.

**12.** The current version of HRS § 706–630 has not changed since Asuncion committed the offense of CI2 that led to his probation sentence.

### B.

Other jurisdictions have taken a variety of approaches to this issue.

### 1.

Several courts have summarily concluded that criminal contempt is an available sanction for violation of a probation condition. For example, the Illinois Supreme Court [13] acknowledged in *People v. Lindsey*, 199 Ill.2d 460, 264 Ill.Dec. 695, 771 N.E.2d 399, 407 (2002), that a probationer who violates a condition of probation "arguably commits an act of indirect criminal contempt and could be subject to both contempt sanctions and resentencing on the conviction for which he [or she] is serving probation." (Internal quotation mark omitted.) The defendant in *Lindsey*, however, was not actually charged with contempt.

In *State v. Williamson*, 619 S.W.2d 145 (Tenn.Cr.App.1981), a trial judge revoked the appellant's probation on grounds that the appellant had violated two conditions of his probation. Specifically, the appellant had: (1) failed to make required installment payments of $20 per month for the costs of his prosecution, and (2) drunk intoxicating liquor, conduct that was prohibited under the terms of his probation. The Tennessee Court of Criminal Appeals held that the first condition was improperly imposed and could not be the basis for a revocation of probation. As to the second condition, the appellant admitted drinking alcoholic beverages, thereby violating a term of his probation, but argued that he should have been held in contempt of court instead of having his pro-

bation revoked. The Tennessee court, noting that this issue had not been presented to the trial judge, stated in passing: "In any event, whether to revoke probation or hold appellant in contempt of court was within the trial judge's discretion." *Id.* at 147. *See also Finn v. State*, 36 Ark.App. 89, 819 S.W.2d 25 (1991) (affirming judgment convicting and sentencing a defendant for criminal contempt for failing to pay restitution, which was entered by the trial court during a proceeding on the state's petition to revoke the defendant's suspended sentence); *Hewett v. State*, 613 So.2d 1305, 1307 (Fla.1993) (stating, in *dicta*, that if a probationer is capable of complying with the terms of his probation but "fails to comply despite the ability to do so, contempt proceedings and/or revocation of any then-existing probation could be justified"); *United States v. McCarty*, 82 F.3d 943, 948 (10th Cir.1996) (holding that although the act of mailing a letter, unaffiliated with court-ordered probationary requirements, is generally not a crime, the defendant's letter defied the trial court's judgment and sentence "prohibiting [the defendant] from contacting his former girlfriend, and therefore constituted indirect criminal contempt").

In none of the foregoing cases was the criminal-contempt charge brought after the probation period had expired.

### 2.

The Alaska Court of Appeals took a different approach in *Alfred v. State*, 758 P.2d 130, 131 (Alaska Ct.App.1988). In that case, the various appellants were ordered, as one of

---

**13.** We note that before the Illinois Supreme Court weighed in on the issue, several Illinois appellate courts had similarly concluded that a contempt charge was appropriate where a probationer violated a term of his or her probation sentence. *See, e.g., People v. Patrick*, 83 Ill. App.3d 951, 39 Ill.Dec. 451, 404 N.E.2d 1042, 1045 (1980) (holding that criminal contempt was a proper sanction for a violation of a term of probation where "[t]he contempt determination was a lesser sanction available to the court" and the probationer was not prejudiced by the determination); *People v. Goleash*, 311 Ill.App.3d 949, 244 Ill.Dec. 598, 726 N.E.2d 194, 200 (2000) (holding that "[w]hen a probationer violates a condition of probation, he [or she] arguably commits an act of indirect criminal contempt and

could be subject to both contempt sanctions and resentencing on the conviction for which he [or she] is serving probation[,]" but expressing bewilderment that the state would ever seek indirect criminal contempt sanctions when the less burdensome procedures to resentence the probationer pursuant to a petition to revoke his or her probation provide a means to achieve the same result). In *Patrick*, the appellate court remarked that "prior to the effective date of the Code of Criminal Procedure on January 1, 1964, contempt of court was the only sanction permissible for a violation of those terms of probation which were a matter of discretion with the court." 39 Ill.Dec. 451, 404 N.E.2d at 1044 (citation omitted).

the conditions of their probation, to contact an alcohol-rehabilitation agency by a specified date and to follow the recommendations of the agency's counselors. When they failed to comply with this condition and the state thereafter declined to initiate probation-revocation proceedings, a magistrate *sua sponte* initiated contempt proceedings and found each appellant to be in criminal contempt of court for failure to comply with the probation condition. Reversing the contempt convictions, the Alaska Court of Appeals concluded:

> There certainly may be circumstances when it would be appropriate for a court to find a person in contempt for violating an order to contact an alcohol rehabilitation agency. Normally, however, the sanction for violation of a condition of probation is revocation of probation. In *Brown v. State*, 559 P.2d 107 (Alaska 1977), the Alaska Supreme Court noted that a defendant who receives a suspended imposition of sentence and is placed on probation has two alternatives. The defendant may elect to accept the conditions of probation or he [or she] may choose to reject the probation conditions and receive the suspended term.... *Brown* implies that a defendant, who violates a condition of probation, is to be sanctioned only by revocation of that probation. *We therefore conclude that the court may not invoke its contempt power to punish a defendant for a probation violation, at least when the defendant has not been warned of this possibility.*
>
> ....
>
> We have a fairness concern here as well. We recognize that the sentencing judge generally informs each defendant who receives a suspended sentence that the suspended term, or a portion thereof, may be imposed at a probation revocation hearing. When a defendant violates a condition of probation, we believe that fairness requires that the court adhere to the terms of its agreement, and conduct a probation revocation hearing, not a contempt hearing.

*Id.* at 131–32 (emphases added) (footnote and citations omitted). Thus, under *Alfred*, a criminal contempt sanction is not available for violation of a condition of probation un-less the defendant has been forewarned of this possibility.

### 3.

Iowa has, by statute, specifically permitted criminal-contempt charges to be brought against a probationer who has violated a term of his or her probation sentence. Pursuant to Iowa Code § 908.11, the following options are available to punish a violation of a probation term or condition:

> If the violation is established, the court may continue the probation with or without an alteration of the conditions of probation. *If the defendant is an adult the court may hold the defendant in contempt of court and sentence the defendant to a jail term while continuing the probation,* or may revoke the probation and require the defendant to serve the sentence imposed or any lesser sentence, and, if imposition of sentence was deferred, may impose any sentence which might originally have been imposed.

*Jenney v. Iowa Dist. Court,* 456 N.W.2d 921, 923 (Iowa 1990) (emphasis in original). Based on this statute, the Supreme Court of Iowa upheld a contempt conviction rendered during a probation-revocation proceeding. *Id.* at 923–24.

### 4.

The majority of jurisdictions that have analyzed the issue have held, for various reasons, that criminal contempt is not an available sanction for violation of a probation condition.

Several courts have adopted the approach taken by the Maryland Court of Appeals in *Williams v. State,* 72 Md.App. 233, 528 A.2d 507 (Spec.App.1987), superseded by statute on other grounds. In *Williams,* the appellant pled guilty to trespassing on the premises of the New Motel and was sentenced to pay a fine of $500, the maximum sentence permitted by statute. However, the trial court suspended payment of $400 of the fine in favor of a twelve-month term of probation, with the condition that the appellant "stay away from the New Motel[.]" *Id.* at 509 (internal quotation marks omitted). The appellant violated the probation condition the

next day, was prosecuted and convicted for contempt of court, and was thereafter sentenced to serve six months in prison.

On appeal, the appellant contended that it was improper to prosecute her for contempt for violating a condition of her probation. In reversing the judgment of conviction, the Maryland Court of Appeals initially explained what probation entails:

> When an accused has been convicted of a crime, "a sentencing judge is vested with virtually boundless discretion. He [or she] may impose any sentence, which is not cruel and unusual punishment proscribed by Article 16 of the Maryland Declaration of Rights, and which is within the statutorily imposed limitations (if any there be), determined to be deserved for or necessitated by the proven criminal conduct in question." *Logan v. State*, 289 Md. 460, 480, 425 A.2d 632 (1981). He [or she] may also suspend the imposition or execution of all or part of the sentence and place the defendant on probation upon such terms and conditions as the court deems proper. Md.Code, Art. 27, §§ 641A(a) and 643A(a).

> **Probation is an act of grace.** *Kaylor v. State*, 285 Md. 66, 75, 400 A.2d 419 (1979). **It permits a court, in its discretion, to suspend what would be the normal penalty for violation of the criminal law in favor of conditions which, if performed, tend to promote the rehabilitation of the criminal as well as the welfare of society.** *Scott v. State*, 238 Md. 265, 275, 208 A.2d 575 (1965). **In other words, in an appropriate case, the criminal defendant is given a second chance—an opportunity to show that by performing the conditions of probation he can function as a law-abiding and useful member of society. If he [or she] faithfully performs those conditions, he [or she] is spared the more drastic punishment that generally follows a violation of the criminal law.**

> **If, however, the defendant fails to perform the conditions of probation he [or she] may forfeit the benefits of probation. In such a case, when the original sentence or some portion of** it is reimposed, the "original sentence is the only true punishment; the probation revocation is merely the withdrawal of favorable treatment previously afforded the defendant." *Clipper v. State*, 295 Md. 303, 313, 455 A.2d 973 (1983).

*Turner v. State*, 307 Md. 618, 624–5, 516 A.2d 579 (1986), quoting 61 Md.App. 1, 9, 484 A.2d 641 (1984). *See* Md.Code, Art. 27, §§ 642 and 643A(c).

**In other words, when a probationer violates a condition of his [or her] probation, he [or she] is not subject to an additional punishment for that violation; but rather to the forfeiture of his [or her] conditional exemption from punishment for the original crime.**[1] Because probation involves a conditional exemption from punishment, rather than a part of the penalty, a court may condition probation upon acts or omissions which it otherwise lacks the authority to impose. *See, e.g., Coles v. State*, 290 Md. 296, 304–05, 429 A.2d 1029 (1981), *Kursch v. State*, 55 Md.App. 103, 107, 460 A.2d 639, *cert. den.* 297 Md. 109 (1983); and *Turner v. State, supra.*

The difference between an act ordered as part of the penalty for a crime and an act ordered as a condition of probation was examined in *Smitley v. State*, 61 Md.App. 477, 487 A.2d 315 (1985), in the context of restitution. Until 1977, the authority of a court exercising criminal jurisdiction to order restitution was somewhat limited; with a few specific exceptions, restitution could be ordered only as a condition of probation (not a part of the penalty) where the court was otherwise empowered to suspend execution of a sentence in favor of probation. In 1977, the General Assembly enacted a new Section 640 to Article 27, to permit an order of restitution to be made either "as a sentence" or as a condition of probation or parole. In *Smitley*, Judge Wilner explained the two quite different methods for effecting the enforcement of an order of restitution:

> **If the order is made "as a sentence," it may, if the State shows an ability on the part of the defendant to comply**

with the order, be enforced through contempt proceedings. If, on the other hand, the order is not stated "as a sentence" but rather as a condition of probation or parole, it may be enforced through the power to revoke the probation or parole.

Although it may be possible for a court to do *both* when entering its judgment, *i.e.*, to order restitution as part of a sentence and, if another part of the sentence is suspended in favor of probation, to order payment of the restitution as a condition of that probation, there is, nevertheless, a significant distinction between the two methods. The nub of the distinction is the inability of the court to increase or enhance a sentence that has once and validly been imposed. *See Mitchell v. State*, 58 Md.App. 113, 472 A.2d 494 (1984); *Williams v. State*, 45 Md.App. 596, 414 A.2d 254 (1980).

When restitution is ordered "as a sentence," enforcement through contempt proceedings serves merely to implement the sentence, not to enhance it. It is an additional remedy to that provided in § 637. Similarly, when restitution is attached as a condition to probation and, upon noncompliance, the court revokes the probation and directs execution of all or any part of the suspended sentence, the initial sentence has merely been implemented, not enhanced. It may even be possible, pursuant to § 642 of Art. 27, for the court to direct execution of the suspended sentence, suspend anew a part of that sentence, place the defendant on further probation, and continue an order of restitution as a condition of the new probation. What the court may *not* do, however, when the restitution is not "as a sentence" but only a condition of probation, is to direct execution of the *full term* of the suspended sentence *and* continue the restitution order, either "as a sentence" or as a condition to some further probation. That is equivalent to *increasing*, not merely implementing, the suspended sentence. (footnotes omitted; emphasis in original)

61 Md.App. at 483–484, 487 A.2d 315.

Although the instant appeal does not involve the payment of restitution, as in *Smitley*, or the payment of court costs, as in *Turner*, it does involve the violation of a condition of probation, and is governed by the same principles expressed in those cases.

---

1. When a probation violation involves the commission of another crime, the probationer may, of course, be prosecuted and, if convicted, punished, however, that punishment is imposed not for a violation of a condition of probation, but for a violation of the criminal law.

528 A.2d at 508–09 (bolded emphases added). The Maryland court then concluded:

The district court's order to "stay away from the New Motel" was a condition of probation, not part of the penalty for trespassing. The court did not purport to make it otherwise; it lacked the authority to do so. When the circuit court convicted the appellant of criminal contempt for violating that condition, and proceeded to sentence her for it, it did not merely withdraw the favorable treatment previously afforded her; it imposed a new and additional punishment. The net result was not merely an implementation of the suspended sentence; it was an enhancement, not only of that sentence, but of the maximum punishment permitted by law. A court cannot do indirectly what it cannot do directly. *Smitley, supra,* at 484, n. 6, 487 A.2d 315. It follows that the circuit court exceeded its authority in finding the appellant guilty of criminal contempt.

*Id.* at 509–10.

In *State v. Williams*, 234 N.J.Super. 84, 560 A.2d 100 (Ct.App.Div.1989), the Superior Court of New Jersey's Appellate Division explicitly accepted "the Maryland approach as expressed in *Williams*." *Id.* at 104. The court initially remarked that there was a

distinction between an order directed to a defendant or another to do or refrain from doing a particular act (the violation of which could be the basis of a contempt of court citation by a judge or indictment by a grand jury), and a conditional order which either states the ramifications of its

violation or has such consequences established by law.

*Id.* at 103. The court held:

> Contempt of court should not be superimposed as an additional remedy in a probation violation setting if the act that occasions the violation itself is not otherwise criminal. The merit of such an analysis can be demonstrated by reference to a situation where a defendant violates the implied condition of remaining law-abiding. If the State is correct, a defendant who later commits even a disorderly persons offense would be subject not only to the violation of probation and the punishment for the disorderly persons offense, but he [or she] could also be indicted for the fourth degree crime of contempt of court. Assuming that on double jeopardy grounds the State would be required to choose between prosecution for the offense or the contempt (in addition to the violation of probation), such a rule would effectively raise all disorderly persons offenses to fourth degree crimes for a defendant on probation, and furthermore would even criminalize non-criminal acts beyond the effect such acts would have as violations of the initial probation order.

*Id.* at 104.

In *Jones v. United States*, 560 A.2d 513, 516 (D.C.1989), the District of Columbia (D.C.) Court of Appeals construed the D.C. statute on probation [14] as prohibiting a trial court from using its contempt power to enforce a condition of probation after the probationary period had expired. In *Jones*, the appellant's sentence to serve sixty days in jail had been suspended and the appellant had been placed on supervised probation for one year, conditioned on his paying restitution in the amount of $328 within 120 days and performing sixty hours of community service within sixty days. About one and a half months after the appellant's probation term had expired, the trial court issued an order requiring the appellant to show cause why his probation should not be revoked for failure to make restitution. After the appellant challenged the order on the ground that his probation had expired, the trial court issued a second order requiring the appellant to show cause why he should not be held in criminal contempt. Following a hearing, the appellant was found guilty of criminal contempt and sentenced to serve forty-five days in jail and pay restitution of $328. *Id.* at 514. On appeal, the court of appeals held that the statute governing the trial court's authority over probationers

> expressly limits the extent of the sanction the trial court can impose for violations of conditions of probation. This statute provides that upon revocation the court may "impose a sentence and require defendant to serve the sentence or pay the fine originally imposed, or both, as the case may be, or any lesser sentence." Thus, in sanctioning violations of conditions of probation, the trial court is limited to the sentence originally imposed, or a lesser sentence. *Probation is a conditional exemption from more severe punishment. It is an act of grace. When a probationer violates a condition of his [or her] probation, the only appropriate sanction is a withdrawal of the previously afforded favorable treatment rather than the imposition of an additional penalty. Punishment for contempt is an additional and separate penalty. ...*
>
> ....
>
> such probation, when in the opinion of the court the ends of justice shall require, and when the probation is so terminated the court shall enter an order discharging the probationer from serving the imposed penalty; or *the court may revoke the order of probation and cause the rearrest of the probationer* and impose a sentence and require him [or her] to serve the sentence or pay the fine originally imposed, or both, as the case may be, or any lesser sentence.
>
> *Jones,* 560 A.2d at 515 (emphases in original).

---

**14.** The D.C. Court of Appeals noted that the statute in question, D.C.Code § 24–104 (1988 Supp.), provided, in relevant part:

> Upon the expiration of the term fixed for such probation, the probation officer shall report that fact to the court, with a statement of the conduct of the probationer while on probation, and the court may thereupon discharge the probationer from further supervision, or may extend the probation, as shall seem advisable. *At any time during the probationary term* the court may modify the terms and conditions of the order of probation, or may terminate

The availability of revocation of probation accompanied by imposition of the original sentence or a portion of that sentence provides the court with ample power to vindicate its authority should a probationer violate a condition of probation. *We hold that the use of the contempt power is inappropriate in such a circumstance, and that violation of a condition of probation may be sanctioned only through revocation of probation and imposition of all or part of the original sentence.*

*Id.* at 516 (emphases added) (citations, brackets, and footnote omitted).

In *People v. Stefanello,* 195 Misc.2d 262, 757 N.Y.S.2d 701 (Ontario County Ct.2003), a New York county court similarly held that an alleged violation of a conditional discharge order could not form the basis for a criminal contempt charge. In *Stefanello,* a defendant convicted for harassment in the second degree was placed on conditional discharge for one year. After throwing three shovelsful of snow at an individual, the defendant was charged with second-degree criminal contempt for committing harassment in the second degree, in violation of the conditional discharge order. *Id.* at 701–02. The defendant was thereafter convicted and sentenced to serve sixty days in jail and three years' probation, and to pay fines and a surcharge amounting to $445. *Id.* at 702. In reversing the conviction and sentence, the court held:

A conditional discharge is a sentence which provides an offender an opportunity for rehabilitation, without institutional confinement, by requiring the offender to adhere to one or more of conditions designed to further the offender's rehabilitation (Article 65 of the Penal Law). A sentence of conditional discharge is a "revocable sentence" (§ 60.01[2] ). Depending on the circumstances, particularly the offender's conduct, the sentence may be modified or revoked entirely and a new sentence imposed.

The Penal Law provides a statutory scheme for violations of the conditions imposed upon such a revocable sentence (see, Penal Law § 420.10). Section 65.05 of the Penal Law provides that the court "may modify or enlarge the conditions or, if the defendant commits an additional offense or violates a condition, revoke the sentence at any time prior to the expiration or termination of the period of conditional discharge."

Pursuant to CPL § 410.70, an allegation that a provision of a conditional discharge order has been violated triggers a hearing. If a violation is found, the Court may then sentence the defendant to a period of imprisonment that relates to the original underlying charge. In the instant case, the conditional discharge order related to a harassment violation that carried a maximum sentence of 15 days in jail.

Rather than adhering to the specific statutory procedure in place for supervision of conditional discharge orders, the defendant was instead charged with criminal contempt for violating the conditional discharge. By ignoring the statutory conditional discharge revocation procedure, the violation of the conditional discharge was elevated to the Class A misdemeanor crime of Criminal Contempt. This resulted in the defendant being subjected to both a criminal prosecution and a possible maximum sentence of one year in jail.

This Court determines that a violation of a conditional discharge order is not a crime or offense in its own right. The new harassment charge lodged against the defendant could have subjected the defendant to a violation of the conditional discharge order, but it should not have subjected him to the offense of Criminal Contempt in the Second Degree. For purposes of the issue presented herein, *this Court finds a sentence of conditional discharge highly analogous to a sentence of probation,* pursuant to Article 65 of the Penal Law. The Court of Appeals ... has held that *a violation of probation giving rise to revocation proceedings is not a "crime" or "offense" in its own right, nor is it a criminal action.* The Court of Appeals in *Matter of Darvin M. v. Jacobs,* supra[, 69 N.Y.2d 957, 516 N.Y.S.2d 641, 509 N.E.2d 336], determined that a probation revocation is a "criminal proceeding" brought after the completed "criminal action". "Its purpose is to de-

termine if defendant's subsequent acts violate the conditions of the original sentence not whether the acts constitute a crime[.]" Similarly, *a violation of a conditional discharge, as presented herein, must be determined not to be a crime in and of itself, but rather a violation of a condition of the original sentence.*

*As such, a conditional discharge is a revocable sentence and not a lawful process or mandate of a court that [sic] upon which a criminal contempt charge may be premised.*

*Id.* at 702–03 (emphases added) (some citations omitted).

In *State v. Letasky,* 336 Mont. 178, 152 P.3d 1288 (2007), the defendant was found guilty of partner/family-member assault and given a suspended sentence, conditioned on the defendant having no contact with his ex-wife. Later, the defendant was convicted of criminal contempt for violating the no-contact condition and he appealed. The Montana statute on criminal contempt provided that "a person commits the offense of criminal contempt when he [or she] knowingly engages in any of the following conduct: ... (c) purposely disobeying or refusing any lawful process or other mandate of the court[.]" *Id.* at 1290 (brackets omitted). In reversing the defendant's contempt conviction, the Montana supreme court held that the order suspending the defendant's sentence

> does not "mandate" that [the defendant] "have no contact with the victim;" rather, the order suspends his sentence on the *condition* that he "have no contact with the victim." This condition does not fall within the plain meaning of the phrase "mandate of the court." *S.L.H. [v. State Compensation Mutual Ins. Fund,* 2000 MT 362, 303 Mont. 364, 15 P.3d 948], ¶ 17. [The defendant] was not acting under an independent order to refrain from contacting [C.L.]. As a result, he cannot be found in contempt for violating a "mandate of the court." *See Goodover v. Lindey's, Inc.,* 257 Mont. 38, 42, 847 P.2d 699, 701 (1993) (reasoning that "[i]f there is no command, there is no disobedience.").

. . . .

**A condition of a suspended sentence, unlike an order of the court, is not an independent mandate of the court.** A condition of a suspended sentence represents a requirement that the Montana Code permits a court to place upon its order suspending an offender's sentence. A condition of a suspended sentence would be meaningless without reference to the independent mandate, specifically, the order of suspended sentence, that it conditions.

*Id.* at 1290–91 (bolded emphases added) (citation omitted). *See also People v. Johnson,* 20 Cal.App.4th 106, 24 Cal.Rptr.2d 628, 631 (1993) (holding that a defendant could not be held in contempt for violating a no-contact condition of probation because probation is an act of grace and the consequences of a violation of probation are governed by Penal Code § 1203.2 et seq. which makes clear that "upon revocation, the trial court may either pronounce judgment for any time within the longest period the defendant might have been sentenced if imposition of the sentence previously had been suspended or if the judgment previously had been pronounced and execution suspended the court may revoke the suspension and order the judgment in full force and effect") (internal quotation marks and brackets omitted); *In re Whitehead,* 908 S.W.2d 68 (Tex.App.1995) (voiding a judgment committing a former husband to jail for thirty days for violating an order that: (1) adjudged him guilty of contempt for failing to pay child support and maintain health insurance for his children, as required in a divorce decree; (2) placed him on probation for one month; and (3) ordered, as a condition of probation, that he pay by a specified date and time $5,000 in cash as a lump sum for his child-support arrearage and $750 in attorney's fees, on grounds that "as a general rule, failing to comply with conditions of probation does not constitute a new act of contempt. Rather, it exposes the offender to commitment for the acts adjudicated at the earlier hearing on the motion for contempt."). *Id.* at 70.

### C.

■ For the following reasons, we join the majority of jurisdictions and hold that crimi-

nal contempt is not available as a sanction for a violation of a condition of probation.

### 1.

First, the granting of probation and the consequences of a violation of the conditions of probation are specifically governed by HRS chapter 706. As noted above, HRS § 706–600 expressly provides that "[n]o sentence shall be imposed otherwise than in accordance with this chapter." There is no provision in HRS chapter 706 that authorizes the use of criminal contempt as a sanction for violation of a condition of probation. Instead, the exclusive sanctions for violation of a condition of probation in HRS chapter 706 are set forth in HRS § 706–625, which provides, in relevant part:

**Revocation, modification of probation conditions.**

(1) The court, on application of a probation officer, the prosecuting attorney, the defendant, or on its own motion, after a hearing, may revoke probation except as provided in subsection (7), reduce or enlarge the conditions of a sentence of probation, pursuant to the provisions applicable to the initial setting of the conditions and the provisions of section 706–627.

. . . .

(3) The court shall revoke probation if the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of the order or has been convicted of a felony. The court may revoke the ... probation if the defendant has been convicted of another crime other than a felony.

(4) The court may modify the requirements imposed on the defendant or impose further requirements, if it finds that such action will assist the defendant in leading a law-abiding life.

(5) When the court revokes probation, it may impose on the defendant any sentence that might have been imposed originally for the crime of which the defendant was convicted.

When a sentencing court withholds a sentence of imprisonment and instead sentences a convicted defendant to a term of probation, the probation is subject to certain mandatory and discretionary conditions that are reasonably necessary to assist the defendant in leading a law-abiding life. When the defendant fails to comply with those conditions, HRS § 706–625 provides the exclusive remedies for sanctioning the defendant's failure.

### 2.

■ As a general rule, "[s]tatutory enactments as to what shall constitute contempt should be strictly construed. They are penal in nature and cannot be enlarged by implication or extended by inference." 17 C.J.S. *Contempt* § 11 at 25 (1999) (footnote omitted). *See also Hicks v. Stigler,* 323 N.W.2d 262, 263 (Iowa Ct.App.1982) (holding that "[g]iven contempt proceedings are quasi-criminal in nature and the necessity for a court to carefully exercise its power, the statute proscribing contemptuous conduct should be construed rather strictly" and "mere false statements, not made under oath, are not contempt" under the statute regulating contempts (citation omitted)); *State ex rel. City of Pacific v. Buford,* 534 S.W.2d 819, 821 (Mo.Ct.App.1976) (stating that "[s]tatutory enactments as to what shall constitute contempt are to be strictly construed"); *State v. Sherow,* 101 Ohio App. 169, 138 N.E.2d 444, 446 (1956) (concluding that "[b]ecause of the arbitrary nature of proceedings in contempt and since they affect personal liberty, the proceedings and statutes governing them must be strictly construed").

HRS § 710–1077(1)(g) (1993), which Asuncion was convicted of committing, states that "[a] person commits the offense of criminal contempt of court if ... [t]he person knowingly disobeys or resists the process, injunction, or other mandate of a court[.]" Pursuant to HRS § 710–1077(2) (1993), criminal contempt, with certain exceptions, is a misdemeanor. Pursuant to HRS § 701–108(2)(d) (1993), "[a] prosecution for a misdemeanor ... must be commenced within two years after it is committed[.]"

Neither HRS § 710–1077(1)(g) nor its commentary or legislative history indicates what constitutes a "process, injunction, or other mandate of a court[.]" However, HRS § 1–14 (1993) instructs that "[t]he words of a law

are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning."

*Merriam–Webster's Collegiate Dictionary* (10th ed.2000) defines "process" in the legal context as "the whole course of proceedings in a legal action[;] the summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders[.]" *Id.* at 927. "Injunction" is defined as "a writ granted by a court of equity whereby one is required to do or to refrain from doing a specified act[.]" *Id.* at 601. "Mandate" is defined as "a formal order from a superior court or official to an inferior one[.]" *Id.* at 705.

◼ Strictly construing HRS § 710–1077(1)(g) and applying the commonly understood definitions of the terms "process[,]" "injunction[,]" or "mandate[,]" we conclude that the no-contact condition of Asuncion's probation sentence was not a "process, injunction, or other mandate of a court" that, if violated, was punishable as criminal contempt. HRS § 706–624 lists various mandatory conditions that a sentencing court is required to impose "as an explicit condition of a sentence of probation[,]" HRS § 706–624(1), as well as various discretionary conditions that a sentencing court "may provide, as further conditions of a sentence of probation[.]" HRS § 706–624(2). Under the statutory scheme governing the disposition of criminal defendants, the no-contact condition imposed on Asuncion as part of his probation sentence did not constitute a "process, injunction, or other mandate of a court" to be independently obeyed by Asuncion. Rather, the no-contact requirement was a condition placed on Asuncion for the privilege of being released into the community on probation rather than being imprisoned. Therefore, the statutory prerequisites for a criminal-contempt conviction were not present in this case and HRS § 710–1077 was not applicable to convict Asuncion for criminal contempt for violating a term of probation.

We are cognizant that in *In re Doe*, 96 Hawai'i 73, 26 P.3d 562 (2001), the Hawai'i Supreme Court held that a juvenile "status offender" may be adjudicated for criminal contempt as a result of violations of a court order of protective supervision. In *Doe*, as a result of the chronic truancy of Jane Doe (Doe), as well as "multiple unsuccessful 'intervention efforts[,]'" the family court issued an order placing Doe under the court's protective supervision. *Id.* at 75, 26 P.3d at 564. The order required, in part, that Doe attend "any school or program as directed by the Department of Education" and "attend [school] each day and every class." *Id.* The order further stated that "major violations may result in detention." *Id.* at 76, 26 P.3d at 565 (format altered). Additionally, the family court's rules of protective supervision stated, "You are to obey laws of the City and County of Honolulu, State of Hawaii, and U.S. Government. Failure to do so may change your status to that of 'law violator.'" *Id.* (format altered) (emphasis omitted). Following Doe's violation of various terms of the order, the family court convicted Doe of criminal contempt and adjudicated Doe a law violator.

This court reversed the family court's decision on grounds that Doe "did not receive adequate notice of the nature and consequences of criminal contempt[,]" *id.* at 78, 26 P.3d at 567, and a status offender cannot be adjudicated as a law violator under the criminal-contempt statute.

The supreme court reversed, holding that the criminal-contempt statute "does not expressly foreclose the family court from adjudicating and punishing a status offender for criminal contempt, . . . and we are not inclined to impute such an intent to the legislature without specific indication thereof." *Id.* at 81, 26 P.3d at 570. Focusing on the legislative intent to "promote the reconciliation of distressed juveniles with their families, foster the rehabilitation of juveniles in difficulty, render appropriate punishment to offenders, and reduce juvenile delinquency[,]" *id.* at 82, 26 P.3d at 571 (quoting HRS § 571–1 (1993)) (internal quotation marks omitted), the supreme court concluded that "if family courts are to retain jurisdiction of status offenders, they must have the authority to handle them. Their inherent contempt

powers provide such tools." *Id.* (internal quotation marks and brackets omitted).

Doe, however, is distinguishable from this case because the order of protective supervision in *Doe* did independently mandate Doe to comply with the terms set forth in the order. In contrast, the order setting forth the conditions of Asuncion's probation did not independently order Asuncion to have no contact with A.V. The no-contact requirement instead imposed a condition on Asuncion which, if violated, could lead to the withdrawal of probation as a sentence.

### 3.

HRS § 706–630 explicitly provides that a defendant whose term of probation has terminated "shall be relieved of any obligations imposed by the order of the court and shall have satisfied the disposition of the court, except as to any action under this chapter to collect unpaid fines, restitution, attorney's fees, costs, or interest." Asuncion's term of probation had already ended when the State charged Asuncion with criminal contempt for violating the no-contact condition of probation. Since the State failed to take any steps during Asuncion's probation to revoke or modify or enlarge the terms of Asuncion's probation and thereby toll the period of Asuncion's probation, HRS § 706–627 (1993), the district court no longer had jurisdiction to revoke Asuncion's probation or modify or enlarge its terms. By convicting Asuncion of criminal contempt as a sanction for a probation violation, the district court essentially extended Asuncion's probation term for two years—the statute of limitations period for contempt—which was inconsistent with HRS § 706–630.

### 4.

It was not a federal or state crime for Asuncion to contact A.V. But for the probation condition, Asuncion's conduct in contacting A.V. would not be prohibited and Asuncion could not be separately prosecuted for contacting A.V. Consequently, when Asuncion contacted A.V. in violation of the no-contact condition of his probation, he did not violate a "mandatory condition" of probation pursuant to HRS § 706–624(1) (1993). When

the district court thereafter convicted and sentenced Asuncion for criminal contempt for violating a discretionary condition of his probation, it invalidly imposed on Asuncion an additional and separate punishment for the original CI2 offense for which he had been placed on probation.

### D.

Our disposition of this appeal renders it unnecessary to resolve the notice argument raised by Asuncion on appeal.

### CONCLUSION

In light of the foregoing discussion, we reverse the judgment entered by the district court on October 4, 2006.